RIPPLE, Circuit Judge,
dissenting.
The Supreme Court’s opinion in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), should not control the analysis in this case. The rule announced in Sandin is limited by its terms and rationale to the prison environment. By contrast, when a patient claims a liberty interest under a patients’ rights statute, Hewitt v. Helms, 459 U.S. 460, 469-72, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), and not Sandin, sets out the appropriate analysis for determining whether a liberty interest exists. Accord Morgan v. Rabun, 128 F.3d 694, 699 (8th Cir.1997). Nevertheless, to the extent this court now adopts the Sandin rule in the context of a mental health facility, the provisions of the patients’ rights statute should inform the court’s analysis of the complained-of hardship in relation to the “ordinary incidents” of life at such a facility. The majority’s opinion in no way accounts for the patients’ rights statute in this regard, and, consequently, is analytically flawed even on its own terms.
A.
In Sandin, the Supreme Court renounced the Hewitt test in the context of determining whether prison regulations create, liberty interests. See Sandin, 515 U.S. at 481-83, 115 S.Ct. 2293. This case does not concern prison regulations, however, but a statute conferring rights on patients receiving treatment for mental illness, developmental disabilities, alcoholism or drug dependencies. See Wis. Stat. § 51.61(1). The reasons the Supreme Court gave in Sandin for abandoning the Hewitt test to discern the liberty interests of prisoners do not support the abandonment of the Hewitt test in the context of discerning the liberty interests of mental health patients protected by a patients’ rights statute. In Sandin, the Court observed that prison regulations were “primarily designed to guide correctional officials in the administration of a prison,” and “not designed to confer rights on inmates .... ” Sandin, 515 U.S. at 481-82, 115 S.Ct. 2293. The statute at issue here, by contrast, is intended to confer rights on patients; it is entitled “Patients rights [sic].” Wis. Stat. 51.61. The Court in Sandin also was concerned that the Hewitt approach “creates disincentives for States to codify prison management procedures....” Sandin, 515 U.S. at 482, 115 S.Ct. 2293. The application of the Hewitt test to patients’ rights statutes would not raise such a concern, because, in the context of a patients’ rights statute, the state legislation was intended clearly to create rights.
In Sandin, the Supreme Court was also concerned that the Hewitt test “has led to the involvement of federal courts in the *487 day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone.” Id. In the context of a patients’ rights bill, however, the people have created rights for patients. Enforcing those rights may require courts to scrutinize on occasion the practices of a mental health facility. The burden of so doing, however, is offset by the benefit of effectuating the will of the people as expressed by their legislature and by the benefit that patients receive in having those rights enforced. It is hardly a squandering of judicial resources to enforce liberty interests that a state has created so clearly.
Application of the Hewitt test in the context of patients’ rights does not raise the same concerns as those raised by its application in the prison environment. In this way, this case is distinct from Rapier v. Harris, 172 F.3d 999 (7th Cir.1999), in which we rejected the Hewitt methodology in distinguishing between punitive and non-punitive action against pretrial detainees because the case implicated the same concerns as Sandin. See id. at 1005. Not only are the concerns that motivated San-din absent in the context of a patients’ rights statute, but the existence of a state statute reflecting the will of the people to create rights for patients militates in favor of a methodology that will take that statute into account.
B.
If the Sandin test is to be applied in this context, however, the court nevertheless must consider the provisions of the patients’ rights statute in determining whether the hardship of which the patient complains is “atypical” or “significant” in relation to the “ordinary incidents” of life in a mental health facility. Simply put, the provisions of the patients’ rights statute should inform the court’s analysis of whether the complained-of hardship is atypical or significant when compared to the “ordinary incidents” of life in the mental health facility. In this way, the court’s analysis would demonstrate a respectful consideration of the state legislature’s determination of how the state’s patients ought to be treated.